Next case on this afternoon's, first case on this afternoon's docket is the case of Dennis Tipton v. Madison County, Illinois, et al. And we have Mr. Harry Sterling for the appellant. And we have Philip Ladding for the athlete. And you may proceed, Mr. Sterling, when you're ready. Thank you. Please record, counsel. To put this case in its proper context, I direct the court's attention to a drawing in the appendix, page 30, that shows this property and shows the difficulties with this property. It has a 50-foot easement diagonally across the property. It has waterways. It has a power gas easement that also runs through the property. It's 10 acres, and it is also topographically challenged. Dennis Tipton filed for a permit to construct a building. He needed a zoning certificate, and he obtained that, and that's at 8-4 of the brief. And it was to construct a 60-by-128-by-23-foot, 6-inch pole bar. Further noted that the setback and height requirements are satisfied. The permit was issued, and he proceeded to build his building. At a point, and he had a permit, and that's shown in the appendix in 8-1. That says build a barn, although the permit authorization in 8-5 says pole building, which is, in fact, what was constructed on the site. Are you saying the permit doesn't say pole building? No, the permit says pole building. It says pole building on the permit authorization. And that's what was constructed. He wasn't quite done with the construction. I think he had everything done except the doors, and he received a stop work order, which then started this series of events about which we find ourselves here in court today. There are two. We'd also direct the court's attention to permitted uses in an agricultural zone, and that's found in A-6. Any number of those uses are not at all related to agriculture, and we note that in the brief. Hand gliding, major utility transmission facilities, railroad rights of way, all kinds of things that are not agriculture. Also, many of these are commercial. 2, 4, 7, 10, et cetera. Those are listed in the brief. Dennis received a letter from the county saying you have to stop doing what you're doing. We know what you do for a living, and you're not going to be permitted to do that, and we're going to issue a stop work order. Mr. Sterling, when your client applied for the zoning certificate and the building permit, did the people involved in the issuance of that know what he was going to put in the building? I don't know. I don't know the answer to that. So there's been no testimony brought out about that? Well, we've had no testimony at all because it was resolved on a motion. So we're not having evidence here. But as a practical matter, when we had the discussion in front of the trial judge, we noted that the equipment, and we mentioned that in the brief, the equipment that he intended to store in the building, he didn't intend to operate his office. He didn't intend to run his business out of there. He intended to use that building to store equipment. And the equipment was substantially similar to the equipment that can be used in the agricultural field. In fact, perhaps far less intense. As we all know, we have followed big combines down country roads and the big semis filled with grain and big tractors and big planters. To store those buildings, to store those kinds of equipment would be commensurate. But to do end loaders and pickup trucks and the kinds of things that he intended to use in his business, just to store them there. That was the problem as far as the county was concerned. So it wasn't, it was his occupation as a concrete man that caused the county to act. Not the use because it hadn't even started to be used. If in fact he had moved his stuff in and then began to operate a business and they had issued him a ticket for a zoning violation, then we'd be in a different kind of place than we are now. Within seven days, they knew, when I say they, Madison County and all these people involved. They are sending a letter saying that they've reviewed the application for the permit and writing to affirm that it may only be used for personal or agricultural purposes and not for business operations. So I'm wondering why, how, how they knew to write this letter. I don't know. Because he already started constructing the building and he was simply going to store equipment there. He wasn't going to run his business. But he was running his business before he applied for the building permit, right? He was running a business before he applied for the permit, but not at that location. We don't know. It could have been that somebody became aware that he was going to put the building up and brought it to their attention. I guess we don't really know how that came about. We don't know how that came about. The reason I'm asking is I'm wondering about the issue of estoppel and what was known by the agent of the city at the time it was issued. Well, we've never had an evidentiary where any of that could have been presented. I thought the same thing, but I didn't know the context in which to present it because there was no opportunity to present evidence. When we got into administrative review, at least my understanding of the law and the statute says you're not allowed to offer any new evidence. It's only what's in the record, and the record doesn't help. Now, there'd be a vehicle to do that. And this was, as you can see, this really was a catch-22. The county wrote the letter. I never regarded that. We never regarded that as an administrative decision that should have then provoked filing a petition for administrative review. I thought that the county was simply saying, no, you can't do it this way unless you agree to make a statement or sign an affidavit that you're going to use it in compliance with the zoning, which Dennis did. What are you referring to? What letter? A-2. You're talking about A-2? I thought A-2 was just there alerting you to the fact that it was zoned agricultural and you had to comply with that ordinance. There's another letter. Yeah, that's a later letter. I think so. I'm pretty sure it's in here. I just don't remember which one it was. It said A-10. They signed an affidavit stating the property owner will only use the accessory building in a manner that adheres to Madison County zoning ordinance or an application for zoning amendment to rezone the property from agricultural to a business district. Now, Dennis sent in a statement, and that's at A-13, and at the same time filed a petition to rezone the property, thinking, well, if the statement that he makes isn't good enough, then he'll go ahead and petition to amend it. And if you look at the permitted uses in the business district, it seems as if this would fit that category completely, particularly the language that talks about provide maximum commercial site design and utilization in areas favorable for commercial growth but experiencing a variety of developmental problems. That's at 93.033B5. That's noted in the brief at pages 11 and 12. This property has developmental problems, and he found a way to use the property to build a storage building, not to run an office, not to run a business, to simply store equipment. It would be equipment that leaves in the morning and comes back at night, probably far less usage than many of the other permitted uses to which I've made reference. But you're not then saying it was a permitted use. You're just saying it should have been a permitted use. It should have been a permitted use. Well, whether it was a permitted use or should have been a permitted use, I think it covers it in any way. I mean, it's not specifically – well, it is specifically. If you look at the definitions, which we refer to, talks that you can have a trailer, commercial or private, that's defined in C15 of the zoning code, and that includes a storage building. This structure or vehicle shall not be considered a residential structure. But if you look at page 5 in the statutes involved, you'll see a permitted use is a trailer, commercial or private. Then you see that definition, and you look to the word a structure, and then you look to the definition of structure. It says anything constructed or erected which requires permanent or temporary location on the ground or is attached to something having a permanent or temporary location on the ground, but not including poles, lines, cables, and other transmissions. Then it also says you can have any land used in truck parking area or yard, any land used or intended to be used for storage or parking of trucks, and including commercial vehicles while not loading or unloading which exceed one and a half tons in capacity. So here they're talking about truck parking. No, where are you looking at? I'm sorry. Page 5 in the statutes involved. And if you look in the permitted uses, and that's at A6, you can see that there are, and A7, A7 talks about number 15, trailers, commercial or private. Then it talks about a structure to which I made reference before. So there are a lot of uses that have nothing to do with agricultural that are commercial, and all he wanted to do was to store his equipment in it. It seems to me that they jumped the gun in saying you can't operate your business in it because he hadn't operated his business. So they asked him to do one of two things, either send us a statement or apply to make it a business, and so he did both, and he lost on both. So, and I understand the argument about the exhaustion of administrative, of your administrative remedies, but as I said, when that letter to which we just referred was issued, I never regarded that as an administrative decision. I just said, okay, fine. I wrote a letter and said, no, you can't do it that way, but this is the way you have to do it. It's not thou shalt not, and this is an affirmative finding that you have to now file a loss. He was trying to avoid a loss. He was trying to get along. His building was already up. They did let him finish the doors, so it was now safe to include stuff, and what I've attempted to do in the brief is to go through the various provisions of the ordinance so that when you ask the question, Justice Chapman, about permitted uses, was it permitted or is it arguably permitted, I think that cuts both ways here. I mean, I think he could do, for example, at page 11 of our brief, we say, we suggest further that the kinds of equipment that the plaintiff would have on the premises would be substantially identical to those one would find on a farm. Backhoe, skid loader, welder, air compressor, form materials, pickup, truck lumber, generator, compactor, storage, trailers, and I note further that much farm equipment is much larger than this. So we don't get why. But couldn't that argument be made about most business, planned business, that would fit into B-5? If he was going to run his business there. I mean, under the B-5, he certainly could. Well, what does it mean to run a business? I mean, is it part of running a business, storing? I mean, it's not like he's storing and not using them. They're being used as part of his business, probably on a daily basis, because I think he said something about the traffic would be relegated to a couple hours a day. Right. That's part of his business, right? Well, I guess you could say that, but it's not real. I mean, his business is to go to a particular site and do work, and he has to retrieve that equipment from a location. If retrieving that equipment is conducting business, then I guess it's conducting business. But it isn't conducting any other businesses that are, when you look at their permitted uses. There are many uses that are required. I understand that, but then isn't there a section, this is what the state says, 93.060, that states that if a use or accessory use is not specifically listed in any of the sections devoted to permitted use, special use or prohibited use for a particular classification of zoning district, it shall be assumed that the use is expressly prohibited in such a district. I mean, that to me would have to be the case, or else you would pretty much almost obliterate the whole idea of having zoning that was either business-oriented or agricultural or residential. If you were able to just parse everything out and say, well, it looks a lot like what you've decided is okay. Well, but if you look at page A7 when it talks about special uses, it specifically says coal building. It does, yeah. Now, I suggest that the storage of equipment in a building is significantly less active than carnivals, circuses, and similar amusement enterprises. Well, I agree. And hand-gliding and gun clubs. Now, those are commercial. Now, what about, I mean, he's not going to store everything in the building, though, right? Well, I don't know what you mean by everything. Well, I thought that there were going to be some parts of his business enterprise that he was going to put in the building and some that he was going to store outside. There are things that would probably be stored outside the same way you would store farm equipment outside and the same kind of equipment. So we believe that Mr. Tipton has been deprived of the use of his property. We think that the judge was in error in determining that the administrative review should have been filed, although he does then make a decision that because it's a question of law, in fact, at one point presented that he will make a decision, which he does then do. He makes a decision and ruled against us, but we think that was an error. The facts aren't disputed in this case. The definitions aren't disputed. The sections of the statute and ordinances are not disputed. It simply is his plan that he had to store equipment similar to that of agriculture. Was that sufficient for them to issue a stop work order and then, in essence, prohibit him from operating the business? And we suggest it wasn't, and then on either side. And if you look at the LaSalle factors on the petition, on the zoning petition, that way, too, he should win both of them simply because of the usages he planned. So, thank you. Okay, you'll have the opportunity for rebuttal. Thank you. Is it laddie or lady? Lady. Lady. I'm not real familiar with this zoning in particular, but it is kind of odd the way they kind of decided that circus. There's a lot of things that have worked their way into zoning statutes over the years that are just remnants, I think, of the past. It's obviously an evolving concept. But the court asked a couple questions early on. The county was not, Justice Gates asked a question as to when the county was aware of the proposal. They were not aware at the time the permit was issued that this was going to be for a business purpose. The representation was that it was for personal use. There was a notification to the county following the issuance of the permit by the city of Troy indicating the nature of Mr. Tipton's business. But he precipitated the letter that came out in early August, Mr. Tipton, asking him to clarify his intentions regarding the use of the property. And throughout, the county received somewhat cryptic representations as to how the property was going to be used. Were these in writing? I think the initial contact was not in writing, I believe. This one was a phone call, which then precipitated the letter from, I believe it was Matt Bronmeier, The county planning and zoning administrator wrote to Mr. Tipton on August 7, advising him, after they became aware of the nature of his operations, that it could only be used for personal agricultural purposes and not used for business purposes. Folks, understanding you own a concrete business, I want to be sure that you understood our requirements before continuing with your project. So at that point, that is 10 days after the permit's issued? No. The permit was issued on July 18th, and the letter went out on August 7th. And then there was a conversation that took place on August 30th, where the county learned from Mr. Sterling that Mr. Tipton intended to use the property to store his equipment in connection with this concrete business. And I don't think that there's any dispute that that was the intention of Mr. Tipton from the inception. And in fact, in the appellant's brief, in their statement of facts, they say they received a permit from Madison County to build the building, and the building was a whole building to be used to store equipment to be used in the plaintiff's business. So that's in the appellant's own statement of facts. The intention was to use the property for the plaintiff's business. And the issue here isn't with the construction of the building. The building in itself is permitted under the zoning district. The issue is the use for a commercial or business purpose, which, as the court noted earlier, is not a permitted use because it's not specifically permitted, and everything that's not specifically permitted is, by definition and by operation of the ordinance, excluded. Can you show me where in this ordinance it says that you can't store a backhoe and a pole bar? Where it says you cannot store a backhoe and a pole bar? Backhoe and a pole bar. It doesn't say that, Your Honor. It says it can't be used for a business purpose. Well, you keep talking about a business purpose. If a guy is storing a backhoe or a welding machine, how do you know what it is? How do you know? It's equipment that's being stored. And as I understand, this property was more than five acres, right? It was ten? Ten acres. A little over ten acres. And one of the permitted uses under C is a pole building on the track of land in excess of five acres? That's correct. So this fits, right? Yes, Your Honor. So who's making the determination that it's a business? You've got a guy who happens to be in the business, but what he's storing there is equipment. And I don't see anywhere in this ordinance where it says what type of equipment can be stored. Well, unfortunately, we have an admission in the case that it was to be used for a business purpose. So we don't have to speculate. The equipment was to be used for a business purpose. Yes, Your Honor. And that's even in the plaintiff's statement of facts is that the intention was to use it for a business purpose. Use the pole barn or use the pole barn to store equipment? Both. Use the pole barn for a business purpose. To store equipment using the connection with the business. So the whole thing was to be used for, and again, the issue isn't necessarily the pole barn. The pole barn in and of itself is acceptable. But I don't see in the ordinance where it says what type of equipment can or cannot be stored in a pole barn. That's really what you're talking about, isn't it? I understand. But it's not what – I don't believe that's in the ordinance. I think it's the use, though, of the equipment for a business, to run a business out of this. Is farming a business? Of course it is. In theory it could be, right. But the difference is it's a permitted use. Where does it say that? That farming is a permitted use, that it's to be used for agricultural purposes. But that's a permitted use. All land that is used for agricultural purposes is a permitted use. Correct. I don't know how that works. But you've got a greenhouse, wholesale and retail. That's a business use. They're all tied to, for the most part, all of the uses that are defined in that statute are tied to an agricultural use and purpose. Carnival? The carnival, I think, is, again, some of those are a virtue of the space and the availability. Blacksmithing? I guess for the horses. Correct. I sure don't see how a beauty shop is tied. It's not quite that. Above the carnivals. Well, then, I think you would. Of course. One of the things we need to get back to as well is the appropriate standard of view. The appellant has tried to argue that this is a mixed law of fact. And I think that Judge Flack addressed that issue squarely in his opinion. And he noted that there were two very distinct issues here. One was, and only one of those was properly before the circuit court. One was the appeal decision of the county to reject the zoning amendment. And the other one was the county's prior decision that the plaintiff could not use the barn for a commercial purpose. And Judge Flack held that only one of those issues was properly before the court. Because this is a petition for administrative review of the denial of the zoning board's decision to rezone the property as requested from agricultural to a B-5 district. So anything prior to that, although it came into the record, is still not part of this proceeding as determined by Judge Flack. So do you take the position in this case that Judge Flack went too far, right? Not at all. You think his order was appropriate? I think his order was extremely appropriate. In fact, I think that the way that he addressed it, Judge Flack stated, and keep in mind too, there's a very one-page order from Judge Flack that basically says, didn't meet the burden. It's not against the benefits. But he incorporates his oral record and decision that he made during the hearing as part of his order. And he states during his ruling in regards to the issue of whether the proposed uses for the property was a violation. He states, I think it's precluded from review. But because the record was before the court, the court made as a part of its ruling from day one that I would consider all the evidence as part of the general ruling. And I've done so. And even if it were not too late to review, I don't think it would change the decision. So what Judge Flack has said is, it's too late. But even if it would have been too late, the same result would have been appropriate. So I don't think that Judge Flack went too far. Because I think that he, by his ruling, excluded all of that prior evidence. I'm taking it into account. But it doesn't make a difference in my ultimate ruling on this issue. So he goes on to state, while I do believe I should be precluded from hearing it, I think it's of no circumstance. Because based on the record, I think there's enough in the record to support the findings on that as well. So I'm affirming the decision of the board below. So the first issue we would even submit is not even properly before this court. Because the plaintiff's first point of appeal, specifically, is the question, whether the trial court erred in finding that the plaintiff's proposed usage of his property for an already permitted in the billed pool barn for storage of equipment for his business was a violation of the Madison County zoning ordinances. Which Judge Flack, in his ruling, said is not part of this decision. It's not properly before the circuit court. So I don't think it's properly before this court either. The other issue was in regards to the denial of the request of the plaintiff's rezone of the property from agricultural to B-5. And as you know, Judge Flack indicated that he, after reviewing the record, he did not find, he can't say, based upon the record before the court, I don't see that the court can find that there's any factual findings against the manifest way of the evidence in light of the fact that there were neighbors speaking out against the proposal. There's evidence in the record that would confirm it would not be in the best interest of everybody involved. So going back to the decision of the zoning board, the underlying body charged with hearing, receiving evidence, and making decisions, 35 people appeared in opposition to Mr. Tipton's zoning amendment request. The surrounding property, primarily single family, residential, and the requested zoning was not compatible with the surrounding area. These are the zoning board's findings. There were concerns over additional noise pollution, concerns over traffic safety issues, concerns over the effect, the detrimental effect on the surrounding properties. Of true importance, the proposed use, proposed amendment, was inconsistent both with the city of Troy's own comprehensive plan regarding zoning and land use, as well as the county's comprehensive plan regarding zoning and land use. And the zoning board properly noted that to grant this request, the zoning amendment request, would constitute impermissible spot zoning for this location. What does that mean? The spot zoning? The spot zoning meaning you have, you have a comprehensive plan that says our plan is that all of this property should be eventually a low density single family residential. That's our proposed future use of this property. And then you go in on one parcel and say, except for this one, it's going to be B5, which would be inconsistent with everything else. Although it would be permissible to have a carnival. In an agricultural district, yes. Correct. But this is an agricultural district. This is an agricultural district, correct. Could they deny a carnival coming in then? Could Barnum and Bailey put up a full barn and fill it full of elephants? They'd probably have to apply for a separate business license if they wanted to do that. But assuming that they had properly obtained a license to hold a carnival, they could hold it in an agricultural zone district. Yeah, but that's pretty vague about what carnivals can do. I mean, it says a special use, carnival circuses and similar entertainment enterprises. Could they build an amusement park there? Not without a building permit. Would they issue one? I can't speak for them as to whether they would issue a building permit or not. I think that would all depend on the facts before the board at that time. So your argument, though, is that we can't decide whether the court was wrong or right on the business use, that issue, with regard to what he was going to store in the pole barn. Yes, sir. I'm saying that the underlying court didn't even reach that decision. So there's nothing to appeal from on that front because they said that issue isn't before us. It wasn't properly preserved. But even if it happened, it's almost like circuit court dicta to a certain extent, because what Judge Flack is doing is saying in his decision, you didn't properly preserve this. But even if you had done so, it still wouldn't have gone your way. So because Judge Flack said it wasn't properly preserved, I don't believe that issue is before this court to make a decision. Do you think that the whether or not Judge Flack's ruling on whether it was properly preserved is before this court? Mr. Sterling thinks it is. I think that that would be, if that would have been raised. But I don't know that that's been necessarily directly raised in his brief. So he may have waived that issue on appeal. Because it's not one of the two points that's presented for appeal to this court. So we would argue that it's, I would submit that it potentially could have been, but that it has probably been waived. I think if you look at the Los Alamos and Claire factors, as the zoning board did when they heard and reviewed the evidence and testimony, that they came to the right result here. The barn that was constructed, this is not a small barn. This is a 60 foot by 128 foot structure. This is a massive structure with 23 foot ceilings. This is a massive building. How big is it, 60 by what? 60 by 128 by 23 foot 6. And then the roof is how big? I think it's a 23 foot roof. I mean, this isn't something that's just going to be used to store a couple pieces of equipment. Which is why I originally asked what the people knew when he applied. I mean, usually, at least in my experience, when you go to a municipality and you apply for a building permit, they usually say, what are you doing with it? And it seemed to me a building that's this big, they would have asked. Your Honor, a lot of the times when those permits come in, I know that this isn't directly in the record. But there's people that would use those buildings to store RVs. There's a lot of the RV storage they would park big. Right, but that's what you do is you ask. You've got a big enough building here, that's a huge building. It is a big building. So nobody asked, oh yeah, we'll just give you a permit. I can't specifically point to this in the record, but my notes reflect that the representations were that it was for personal use and not for business purposes. But then once they became aware, the county's pretty proactive on drawing the line on any agricultural district to preserve the integrity of the agricultural zoning restrictions as a whole. The problem is you let one person come in and get a business use that's not directly permitted under the statute. And then you have somebody who's a neighbor come in and say, well, then I want to do this too. And then I want to do this. And you did this. And it degrades the integrity of the zoning restrictions as a whole. So as soon as the county became aware that the potential existed for business use, the letter was generated from Mr. Braunmeier to Mr. Tipton. So we, and I don't think that the plaintiff has necessarily indicated to this court that this, keeping in mind the burden is a manifest way to deal with this burden. I don't think that there's been any evidence that would show that the decision, the underlying decision of the zoning board in regards to the zoning amendment was against the manifest way to the evidence. I mean, people can agree to disagree on the ultimate decision. But that doesn't mean, just because you would have reached necessarily a different decision doesn't mean it was against the manifest way to the evidence. And there was a sufficient amount of evidence before the zoning board when they made the decision that they made herein. So we would ask that the court affirm the judgment of Judge Black and find in favor of the count on the appeal. Thank you. Thank you. This is fairly rebuttal. As far as Judge Black, Judge Black wrote in 735 ILCS 5-3-110. As far as the scope of review, the section says, quote, the hearing and determination shall extend to all questions of law and fact presented by the entire record before the court. End of quote. The entire record included everything. It included the challenge to the decision that the county made on the usage underneath these various sections. And is that count one? Yes. I find it interesting that Mr. Layden would refer to, by golly, 35 people were present. I'm sitting here thinking about how many people would be present if somebody wanted to put in a gun club, having just gone through a gun club case, and they wouldn't have to build anything. I mean, they wouldn't have to have a building permit. This is a permitted use. It's a permitted special use to have a gun club there. Carnival circus. I mean, how many people would object to there being a circus there? And what would that traffic problem be? And would that be consistent with the zoning plan? I mean, this is, pardon me, but it's just kind of a mess to mix all this stuff up. Mining, would they want to have a mine operation there? As far as building size is concerned, that's in the zoning certificate issued by Madison County. It is hard for me to try to make sense out of how some of these things coexist. But I don't see that you're, I mean, it doesn't say your business purpose necessarily. I mean, it does say carnivals, and it does say airports. That's a business. Well, I know they are. I know they are. I'm just saying that it doesn't have anything about concrete businesses. Well, that's true. I mean, it doesn't say concrete business. It says an awful lot of things that would be far more intrusive. How about a rock concert? Well, that would be a good one, too, wouldn't it? Are you actually? But they just have a commercial on television right now about Woodstock. Then he goes and hugs the tree on this farm. That's a Subaru commercial. Oh, okay. I wasn't sure. But I guess I found it amusing as far as Woodstock was concerned. Mr. Armstrong, somebody said that you admitted that this was a business that was going to be going on. What context is that in? I don't know. As far as admitting that it's a business. I don't see that it's required as far as what you're storing. This is storage. But it's not just storage, is it? I mean, you're going to be using it on a daily basis, apparently. Well, that's supposedly part of what his statement was. His written statement. People will come there and get equipment to take out to job sites to use. But the business is not being conducted at the pole barn. It's being conducted away from the farm or the property. But when Justice Chapman asked that question that she asked about, isn't that part of the business? It probably is part of the business in that sense. I'm trying to think of an analogy for the law business. I mean, I suppose your law books, inactive law books on a shelf, if people still have those, are a part of your business. A piece of equipment. And if it was me, I'd much rather have a backhoe next door to me than I would. So the way you're looking at his law books? Than I would a ferris wheel. How about a beer blast? That's permissible is a beer blast. Well, you know, I mean, that's why. But see, that's my problem with it, actually, is this ordinance states specific businesses. But when it gets to buildings like a pole barn building, it doesn't say what you can put in that building. There is no business use. And so I'm wondering why a backhoe, for example, couldn't. It's just a backhoe. The fact that it's used for a concrete business somewhere else. It could also be used for moving rocks on his property. Sure. So I'm having a little trouble with where they in the ordinance, they talk about specific businesses. But when they talk about storage units, they don't talk about business. That was the exact point of my letter. To the county.  Thank you. Thank you, Mr. Sterling. Thank you, Mr. Lady. Very interesting. We will take it under.